410 A.2d 731

HOSPITAL ASSOCIATION OF PENNSYLVANIA et al., Appellants,

v.

Gordon K. MacLEOD, M.D., Secretary of Health, and the Department of Health of the Commonwealth of Pennsylvania.

Supreme Court of Pennsylvania.

Argued Sept. 20, 1979.

Decided Feb. 1, 1980.

James H. Stewart, Jr., Michael C. Fox, Harrisburg, for appellants.

John G. Knorr, III, Dept. of Justice, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

### OPINION OF THE COURT

ROBERTS, Justice.

Appellants, the Hospital Association of Pennsylvania and twenty-one Pennsylvania hospitals, contend that state regulations governing "general and special hospitals," 28 Pa.Code §§ 101.1 et seq., were promulgated without statutory authority by appellees, the Secretary and the Department of Health. We agree with appellees and the Commonwealth Court that ample basis for the challenged regulations is provided by article IX of the Public Welfare Code.[1] Accordingly, we affirm.

### I

In 1972, appellees determined that the department's "Rules and Regulations for Hospitals," last revised in 1966, should again be revised. In full compliance with publication and notice requirements,[2] appellees published a set of proposed rules and regulations designed to replace the 1966 rules. 2 Pa.Bull. 1129 (1972). Between 1972 and 1977, appellees evaluated extensive public opinion on the proposed rules, including comment from the Hospital Association of Pennsylvania, and incorporated many suggestions into a revised draft. Again by proper notice, appellees published a revised set of rules and regulations. 7 Pa.Bull. 939 (1977). After further public comment, appellees modified the proposed rules and, in December, 1977, adopted them as modified. 7 Pa.Bull. 3631 (1977).

The challenged regulations span twenty-six chapters, ranging from such concerns as "Governance and Manage-

1. Act of June 13, 1967, P.L. 31, §§ 901 et seq., as amended, 62 P.S. §§ 901 et seq. (1968 and Supp.1979).

2. See Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, §§ 101 et seq., 45 P.S. §§ 1101 et seq. (Supp.1979).

ment" to "Construction Standards." [3]  Within each chapter there are a series of specific regulations.  For example, under the heading "Governance and Management," there appear regulations setting objectives for hospital by-laws, 28 Pa.Code § 103.3, establishing functions to be performed by a "governing body," id. at § 103.4, and directing formation of various "governing body committees."  Id. at § 103.6.  Also included are regulations establishing a "Patient's Bill of Rights," id. at §§ 103.21–103.24, managerial and administrative responsibilities, id. at §§ 103.31–103.39, and standards for fiscal control.  Id. at §§ 103.41–103.46.  In all, appellees promulgated over 500 specific regulations.

Before the effective date of the regulations, appellants filed a petition for review in the Commonwealth Court, alleging that appellees lacked statutory authority to promulgate the challenged rules and regulations.  On appellees'

**3.** The Table of Contents of the challenged regulations provides:

| Chap. | | Sec. |
|---|---|---|
| 101. | General Information | 101.1 |
| 103. | Governance and Management | 103.1 |
| 105. | Admission and Discharge | 105.1 |
| 107. | Medical Staff | 107.1 |
| 109. | Nursing Services | 109.1 |
| 111. | Dietetic Services | 111.1 |
| 113. | Pharmacy Services | 113.1 |
| 115. | Medical Record Services | 115.1 |
| 117. | Emergency Services | 117.1 |
| 119. | Outpatient Services and Short-Term Procedure Units | 119.1 |
| 121. | Social Work Services | 121.1 |
| 123. | Anaesthesia and Respiratory Services | 123.1 |
| 125. | Laboratory Services | 125.1 |
| 127. | Radiology Services | 127.1 |
| 129. | Nuclear Medicine Services | 129.1 |
| 131. | Rehabilitation Services | 131.1 |
| 133. | Special Care Units | 133.1 |
| 135. | Surgical Services | 135.1 |
| 137. | Obstetrical Services | 137.1 |
| 139. | Newborn Services | 139.1 |
| 141. | Dental Services | 141.1 |
| 143. | Podiatry Services | 143.1 |
| 145. | Professional Library Services | 145.1 |
| 147. | Environmental Services | 147.1 |
| 149. | Central Supply Services | 149.1 |
| 151. | Fire, Safety, and Disaster Services | 151.1 |
| 153. | Construction Standards | 153.1 |

motion for summary judgment, the Commonwealth Court sustained the regulations and denied appellants relief.[4] This appeal followed.[5]

## II

Section 902 of the Public Welfare Code expressly provides that the department shall have "supervision" over a number of facilities, including, under subsection (8), "[a]ll institutions for adults within this Commonwealth."[6] Appellants concede, as they must, that "general and special hospitals" "are institutions for adults."[7] They dispute, however, the

4. Upon filing their petition, appellants requested the Commonwealth Court to grant them a preliminary injunction. The Commonwealth Court granted the preliminary injunction, but later dissolved it upon granting appellees summary judgment.

5. This Court granted appellants a stay pending appeal. In view of our disposition, this stay, of course, is vacated.

6. Section 902 provides:
   *"Supervisory powers*
   The department shall have supervision over:
   (1) All State institutions;
   (2) All supervised institutions;
   (3) All children's institutions within this Commonwealth;
   (4) All maternity homes and hospitals within this Commonwealth;
   (5) Any labor or system of labor carried on in the penal, correctional or reformatory institutions of the State;
   (6) Any system of reparation provided by the Commonwealth for relief from conditions caused by mine-caves, fire, flood, or other casualty, and constituting a menace to public safety and welfare;
   (7) All boarding homes for children which have been licensed by the State;
   (8) All institutions for adults within this Commonwealth."
   The "department" refers to the Department of Public Welfare. See Public Welfare Code of 1967, § 102 (definitions). By "Reorganization Plan No. 2 of 1973," P.L. 457, 71 P.S. § 755–2 (Supp.1979), the Legislature transferred to the Department of Health the "functions, powers and duties of the Department of Public Welfare with regard to the supervision and licensing of general and special hospitals, as set forth in Articles 9 and 10 of ['The Public Welfare Code.']"

7. See "Appendix 'B' to Brief for Appellants" at "B–33." Section 901 of the Public Welfare Code of 1967 defines an "institution for adults" as follows:
   " 'Institution for Adults' means any incorporated or unincorporated public or private organization, society or association including any agency of a county, county institution district or municipal-

scope of appellees' power of "supervision." Appellants claim they possess "managerial prerogatives" which may not be regulated by appellees.

■ The Public Welfare Code does not define the department's "supervisory powers" under section 902. Nevertheless, our review of the Code must recognize that "[s]ubstantive rule-making is a widely used administrative practice, and its use should be upheld whenever the statutory delegation can reasonably be construed to authorize it." Bernard Schwartz, Administrative Law § 56 at p. 151 (1976). As Dean Freedman points out, "[t]he existence of a body of standards tends to encourage greater deliberations, self-consciousness, and consistency in the exercise of administrative discretions and thereby reduces the likelihood that an agency will act arbitrarily." James O. Freedman, Crisis and Legitimacy: The Administrative Process and American Government 245 (1978). We are satisfied that, reasonably construed, the Public Welfare Code demonstrates that the Legislature fully intended to permit the department (A) to supervise hospitals' managerial practices and (B) to do so through promulgation of rules and regulations.

## A

■ Nowhere in article IX of the Code is "managerial prerogative" reserved. Compare Public Employe Relations Act, Act of July 23, 1970, P.L. 563, § 702, 43 P.S. § 1101.702 (Supp.1979) ("[p]ublic employers shall not be required to bargain over matters of inherent managerial policy"). Rather, hospital administration is expressly within the pur-

ity which provides for food, shelter and some service to adults, or which provides rehabilitation, training, guidance or counselling to the blind or visually handicapped, or to the physically or mentally handicapped, including but limited to the following: homes for the aged and infirm, nursing homes, convalescent homes, placement agencies for adults, general and special hospitals and institutions for mentally ill and defective adults, rehabilitation centers having living-in arrangements, workshops and facilities for the rehabilitation of the visually, mentally or physically handicapped, and all organizations for the prevention of blindness."
See also supra note 6 (quoting "Reorganization Plan No. 2 of 1973").

view of existing departmental regulatory obligations. Surely it cannot seriously be disputed that proper, uniform managerial practices promote the quality and efficiency of the delivery of health care services to individual consumers requiring health care. It is precisely this goal which the Legislature requires the department to achieve. Section 921(c) of the Code, fully applicable to hospitals,[8] expressly directs the department to set "standards for the safe and adequate care of individuals," making "adequate and proper provision[ ] for  .  .  .  (x) humane care."

That managerial practices of hospitals are within the legislatively-defined competency of the department under section 921 is demonstrated by an analogous provision of article IX. Section 911 of the Code expressly contemplates the department's review of the managerial practices of "supervised institutions." Under section 911(a)(2), the Legislature places "all and every matter and thing" relating to the "usefulness, administration, and management" of "supervised institutions," and "to the welfare of the inmates thereof  .  .  . ," within the department's mandatory obligation of "inquir[y] and examin[ation.]"[9] Indeed, "supervised institutions," by definition, expressly includes "all hospitals, almshouses, or poor houses, maintained by any county, city, borough, township or poor district of this Commonwealth." We are convinced, therefore, that the Legislature

---

**8.** See Public Welfare Code, § 921(b) ("hospitals" expressly enumerated as "institutions" subject to departmental standards).

**9.** Section 911(a)(2) requires the department:

"To visit and inspect, at least once in each year, all state and supervised institutions; to inquire and examine into their methods of instruction, discipline, detention, care or treatment, the care, treatment, government or management of their inmates or those committed thereto, or being detained, treated or residing therein, the official conduct of their inspectors, trustees, managers, directors or other officer or officers charged with their management by law or otherwise, or having the management, care, custody or control thereof, the buildings, grounds, premises, and equipment thereof, or connected therewith, and all and every matter and thing relating to their usefulness, administration, and management, and to the welfare of the inmates thereof, or those committed thereto or being detained, treated or residing therein."

has given the tribunal with experience and expertise over managerial practices of "supervised institutions" similar authority to supervise the managerial practices of hospitals subject to departmental standards under section 921.[10]

## B

We are also satisfied that section 902 of the Code authorizes the department to supervise managerial practices of hospitals through promulgation of "rules and regulations." No provision of article IX expressly confers authority upon the department to establish "rules and regulations" governing hospitals. Rather, under section 921(c), the department is required to establish "standards." Nonetheless, in discussing the appropriate means of enforcing these mandatory "standards," the Legislature clearly contemplates departmental "rules and regulations" affecting hospitals. Section 921(e) provides:

"Whenever the department shall upon inspection, investigation or complaint find any violation in any institution of *rules or regulations adopted by the department,* or any failure to establish, provide or maintain standards and facilities required by this act or by the department, it shall give immediate written notice thereof, to the officer or officers charged by law with or in any way having or exercising the control, government or management of such institution, to correct the said objectionable condition in the manner and within the time specified by the depart-

---

**10.** One other consideration, overlooked by appellants, confirms our conclusion that appellees possess authority under sections 911 and 921 to regulate hospitals' managerial practices. Were appellants to prevail in their attack upon the challenged regulations, at least portions of appellees' "Rules and Regulations for Hospitals" promulgated in 1966, including those relating to hospital governance and the like, would be vulnerable to similar criticism. The Legislature, however, in codifying the above provisions in the Public Welfare Code of 1967, made no effort to disturb appellees' 1966 regulations. It is established that administrative interpretations, not disturbed by the Legislature, are appropriate guides to legislative intent. 1 Pa.C.S. § 1921(c)(8). We think it a fair corollary that the Legislature's failure in 1967 in any respect to disturb appellees' exercise of rule-making authority in 1966 evinces legislative recognition of appellees' regulatory authority over "managerial prerogative."

ment; whereupon, it shall be the duty of such officer or officers to comply with the direction of the department. If such officer or officers fail to comply with such direction, the department may request the Department of Justice to institute appropriate legal proceedings to enforce compliance therewith, and the department may withhold any State money available for such institution until such officer or officers comply with such direction." (emphasis added)

Section 921(e) could contemplate "rules and regulations adopted by the department" only if some other provision of the Code grants the department authority. It must be remembered that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). To "give effect" both to the department's supervisory power under section 902 and the language "rules and regulations" found in section 921(e), it must be concluded that the department is empowered, under its power of "supervision," to formulate "rules and regulations."

### III

For all the above reasons, none of the regulations appellants have challenged, including those affecting governance, establishing a "Patient's Bill of Rights," and setting appropriate considerations for admissions, can realistically be viewed as beyond the reach of departmental authority conferred under section 902. Accordingly, we hold that the Legislature has authorized the department to promulgate its rules and regulations concerning hospitals. We therefore affirm the decree of the Commonwealth Court denying appellants injunctive relief.[11]

Decree affirmed. Each party pays own costs.

11. We do not pass upon the reasonableness of any particular regulation. We hold only that appellees possess statutory authority to promulgate the challenged regulations. Cf. *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261 (1978) (upholding regulations of State Board of Education, but not reaching reasonableness of any particular regulation).

FLAHERTY, J., filed a dissenting opinion, in which LAR-SEN, J., joins.

MANDERINO, J., did not participate in the decision of this case.

FLAHERTY, Justice, dissenting.

I cannot sit idly by while the majority of my colleagues give an unwarranted license to a governmental agency to enact social legislation in the form of regulation without a semblance of authority to be found in the enabling legislation. A governmental regulation to be valid must gain its life from a clearly defined delegation of statutory origin. The obvious reason for this principle has its foundation in the nature of our concept of government. The law by which the people of our society are governed emanates from them, through their elected representatives in the legislative branch of government. The executive branch cannot make law, while the judiciary has the duty to determine whether any restrictions on human freedom are valid, and that includes the duty to determine whether regulations promulgated by an agency of the executive branch of government fall within the limits of authority delegated to that agency by legislation. When regulations go beyond the purpose of the enabling statute, or bear no rational relationship to the purpose of that legislation, they are of no force and effect and must be set aside.

The Public Welfare Code,[1] § 921(c) provides:

The department shall establish standards for the safe and adequate care of individuals, not inconsistent with the laws of this Commonwealth and the rules and regulations of the various departments of the Commonwealth, for all such institutions within this Commonwealth, which standards shall make adequate and proper provisions for (i) fire protection, (ii) water supply and sewage disposal, (iii) sanitation, (iv) lighting and heating, (v) ventilation, (vi) safety, (vii) equipment, (viii) bed space, (ix) keeping of

1. Act of June 13, 1967, P.L. 31, §§ 901 et seq., as amended, 62 P.S. §§ 901 et seq. (1968 and Supp.1979).

records of identification of residents in the institution and their next of kin, of medical care provided and all pertinent admission and discharge data, and (x) humane care.

It is not difficult to glean the clear meaning of this language. "The department shall establish standards for the safe and adequate care of individuals . . . which standards shall make adequate and proper provisions for . . . ." The plain language provides for no other construction than a requirement for minimum standards in the enumerated areas. In § 902 of the Code there is a provision for the supervision over institutions for adults, and § 921(c) sets forth the subjects for that supervision. The majority opinion draws upon §§ 902 and 911(a)(2) of the Code in an attempt to justify regulation of hospital management methods on the theory that the department must have been intended by the legislature to apply its management abilities, acquired in examining "supervised institutions", to preempt and control hospital management generally under § 921(c).[2] Such a far-reaching construction strains to grant

2. § 901 defines "supervised institution" as follows:

' "Supervised institution" means any charitable institution within the Commonwealth which receives financial assistance from the Commonwealth, either directly or indirectly, and to which the Governor does not appoint any member of the board of inspectors, managers, trustees or directors; all houses or places within the Commonwealth in which any person of unsound mind is detained, whenever the occupant or owner of the house, or person having charge of such person of unsound mind, receives any compensation for custody, control or attendance, other than as an attendant or nurse; and also all institutions, houses, or places, in which more than one such person is detained, with or without compensation paid for custody or attendance; all children's institutions and maternity homes and hospitals within the Commonwealth; all homes or hospitals for crippled children within the Commonwealth, except the State Hospital for Crippled Children; *all hospitals, almshouses, or poor-houses, maintained by any county, city, borough, township or poor district of this Commonwealth*; and all institutions, associations and societies within this Commonwealth into whose care the custody of delinquent, dependent or neglected children may be committed, and all houses and places maintained by such institutions, associations or societies in which such children may be kept or detained. 1967, June 13, P.L. ——, No. 21, art. 9, § 901.' (emphasis added)

this agency a power not expressly or impliedly delegated to it. In *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation,* 476 Pa. 302, 310, 382 A.2d 731, 735–736 (1978), this court repeated a longstanding principle:

> In delimiting the scope of an administrative agency's power, we do not write on a blank slate, and the controlling principles are firmly established:
>
> "The principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined." *Green v. Milk Control Comm'n,* 340 Pa. 1, 3, 16 A.2d 9 (1940).

The regulations here challenged have no bearing on the statutory purpose of supervision of standards of care set forth in § 921(c), but rather represent a manifesto for a complete take over by government of management prerogatives in the operation of hospitals. Put another way, a socialization of private hospitals!

We have never held that the power to regulate *is* the power to manage, per se; quite to the contrary. In *North Pennsylvania Power Company v. Public Utility Commission,* 333 Pa. 265, 267–268, 5 A.2d 133, 134–135 (1939), where this

'§ 911 defines the department's power over "supervised institutions" as follows:
§ 911 Visitation and inspection
(a) The department shall have the power, and its duty shall be:
(1) To make and enforce rules and regulations for a visitation, examination and inspection of all *supervised institutions.*
(2) to visit and inspect, at least once in each year, all State and *supervised institutions*; to *inquire and examine into* their methods of instruction, discipline, detention, care or treatment, the care, treatment, government or management of their inmates or those committed thereto, or being detained, treated, or residing therein, the official conduct of their inspectors, trustees, managers, directors or other officer or officers charged with their management by law or otherwise, or having the management, care, custody or control thereof, the buildings, grounds, premises, and equipment thereof, or connected therewith, and all and every matter and thing relating to their usefulness, administration, and *management,* and to the welfare of the inmates thereof, or those committed thereto or being detained, treated or residing therein.' (emphasis added)

Court held that the P.U.C. lacked power to prevent a certain utility merger, we said:

The Public Utility Commission is *not a super board of directors* for the public utility companies of the State and it has *no right of management* of them. Its sole power is to see that in the matter of rates, service and facilities, their treatment of the public is fair. Speaking through the present Chief Justice, we said: "It was *not intended by the Legislature* that the commission should *be a board of managers to conduct and control* the affairs of public service companies; but it was meant that, where certain of their powers and obligations had intimate relation to the public through fairness, accommodation, or convenience, the commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the commission's jurisdiction. * * * The *company manages its own affairs to the fullest extent consistent* with the protection of the public's interest, and only as to such matters is the commission authorized to intervene, and then *only* for the *special purposes mentioned* in the act." *Coplay Cement Mfg. Co. v. Public Ser. Comm.,* 271 Pa. 58, 61, 114 A. 649, 16 A.L.R. 1214. "It must never be forgotten that, while the state may regulate with a view to enforcing reasonable rates and charges, it is *not the owner* of the property of public utility companies, and *is not clothed with the general power of management incident of ownership."* *Southwestern Bell Tel. v. Public Ser. Comm.,* 262 U.S. 276, 289, 43 S.Ct. 544, 546, 67 L.Ed. 981, 31 A.L.R. 807. (emphasis added)

*North Pennsylvania Power Company* was overruled in *York v. Pennsylvania Public Utility Commission,* 449 Pa. 136, 295 A.2d 825 (1972) by a holding that the P.U.C. had specific statutory authority to review mergers. However, the *North Pennsylvania Power* view of noninterference in management was not disturbed. Thus, unless *clear* statutory authority is found for an agency to control management matters, it should not be implied.

A web of more than five hundred "regulations" has been promulgated by appellees' rules which include controls on hospital organization, patients' dealings with administrators, admissions standards, fiscal controls, medical and social services to be provided, and management methods to be used in meeting care standards. Far from simply assuring supervision of minimum quality standards of health care, the obvious legislative purpose, the rules put the department in a self-appointed position as creator and manager of a socialized integrated health care system, and constitute an enactment or sweeping "social legislation" in the guise of an executive regulation, completely bypassing and usurping the functions of the General Assembly. The executive branch of government must not be permitted to adopt such schemes without *clear* legislative action, as such systems are to be adopted by the will of the people, expressed through legislators—not through executive regulators. For this reason, scrutiny of the department's power is an important obligation of this Court.

An understanding of the great hazard created by the holding of the majority becomes evident when considering the scope and detail of these regulations. Hospitals are deprived of their right as private institutions to structure and govern their own organizations by rules which describe ownership,[3] boards,[4] bylaws contents (including a requirement of a Patient's Bill of Rights),[5] duties of those who

**3.** § 103.1. Principle.
   There shall be an organized governing body or designated person vested with ownership who shall assume the full legal authority and responsibility for the conduct of the hospital.

**4.** § 103.2. Single and autonomous boards.
   Any hospital organized as a subsidiary part of an educational, religious, or commercial parent organization shall be governed by a body designated by the parent organization. A hospital governing body may govern more than one hospital.

**5.** § 103.3. Governing body bylaws.
   The governing body shall adopt bylaws in accordance with all requirements contained in this subpart and in accordance with the community responsibility of the hospital. As a minimum, the bylaws shall do the following:

govern the institution (including a duty to devote resources to emotional and spiritual care for patients),[6] the manner in

(1) State the general and specific goals of the hospital.

(2) Be reviewed annually, be revised as necessary, and be dated to indicate when last reviewed or revised.

(6) Require the approval of the bylaws of any auxiliary organizations established by the hospital.

(9) Establish a procedure for implementing, disseminating, and enforcing a Patient's Bill of Rights in compliance with §§ 103.21–103.24 of this title (relating to Patient's Bill of Rights).

(10) Require the governing body to institute procedures to ensure:

(i) orientation of newly-elected board members to specific board functions and procedures;

(ii) periodic reexamination of the relationship of the board to the total hospital community;

(iii) some opportunity for the general public to attend meetings of the governing body on occasion; these meetings shall be well publicized in advance of the meeting date and shall be held at a time convenient for attendance by the general public; and

(iv) the taking of minutes of all governing body and executive committee meetings and dissemination of those minutes, or summaries thereof, on a regular basis to all members of the governing body.

**6.** § 103.4. Functions.

The governing body, with technical assistance and advice from the hospital, shall do the following:

(2) Formulate short- and long-range plans for the development of the hospital.

(6) Utilize the advice of the medical staff in granting and defining the scope of clinical privileges to individuals. When the governing body does not concur in the medical staff recommendation regarding the clinical privileges of an individual, there should be a review of the recommendation by a joint committee of the medical staff and governing body before a final decision is reached by the governing body.

(7) Require that applicants be informed of the disposition of their application for medical staff membership or clinical privileges, or both, within a reasonable period of time after their application has been submitted.

(9) Delegate to the medical staff the authority to evaluate the professional competence of staff members and applicants for staff privileges and hold the medical staff responsible for recommending initial staff appointments, reappointments, and assignments or curtailments of privileges.

(10) Require that resources be made available to address the emotional and spiritual needs of patients.

(15) Ensure that the annual hospital report includes the names of the governing body members, the names of the hospital's officers, and a financial report and that the annual report is available to the public for review.

which committees shall be run,[7] and requirements for financial disclosure to the governing body.[8]  These far-reaching restrictions on private freedom in conducting business deserve close scrutiny for statutory authority—authority which is here totally lacking.

In addition, the rules require job descriptions,[9] educational programs,[10] rate schedules,[11] insurance programs,[12] and written purchasing policies.[13]

> § 103.6.  Governing body committees.
> (c) There shall be a planning committee, or its equivalent, of the governing body established to develop written short- and long-range plans for the hospital.  These plans shall coordinate the hospital services with those of other health care facilities and related community resources.  Representatives of this committee, who need not be governing body members, shall be appointed to serve as liaison to local or regional health planning agencies.

**7.** § 103.7.  Committee procedures.
> (a) Basic procedures shall be established by the governing body to ensure effectiveness of committee activity.  These shall include clear written statements or directives from the governing body specifying the authority, purpose, and goals of the committee.  Committee procedures should also include:
>> (1) Attendance requirements, notice of meetings, and methods of recording minutes.
>> (2) Timely prior distribution of agendas, previous minutes, issue or option papers, and other relevant documents.
>> (3) Restrictions of number of members which will assure efficient working relationships without prejudicial exclusion of any members.

**8.** § 103.10.  Disclosure requirements for related organizations.
> The governing body shall prohibit the lease, sale, or exclusive use of any hospital buildings or facilities receiving a license or certificate of compliance in accordance with this subpart or any entity which provides medical or other health services to the hospital's patients, unless there is a full, complete, and, except in the case of a sale, periodic disclosure to the governing body of that entity's financial assets, liabilities and earnings distribution.

**9.** § 103.35.  Job descriptions.
> There shall be a written job description for each type of job in the hospital, including the chief executive officer and heads of departments.

**10.** § 103.38.  Education programs.
> Orientation and in-service training programs should be provided in order that hospital personnel may maintain their skills and learn of new developments in health care.

---

**11, 12 and 13.**  See notes 11, 12 and 13 on p. 532.

A most disturbing set of regulations controls a hospital's ability to determine which persons shall be admitted for care by limiting reasons for refusing admission.[14]

By restricting the right of choice, the regulations force hospitals to assume responsibilities and potential liabilities far beyond those traditionally accorded them. Certainly, to allow such a novel change, not by statute, but by executive regulation which exceed the bounds of *clear* authority, is to set a most dangerous precedent.

The regulations also govern admission to medical staffs,[15] medical staff committee memberships and duties,[16] conduct

**11.** § 103.42. Rates.

A current written schedule of rates and charges for all hospital services shall be maintained and made available upon request to those who use those services.

**12.** § 103.43. Insurance.

There should be an insurance program which provides for the protection of the physical and financial resources of the hospital. There should be appropriate coverage of the buildings and equipment and adequate comprehensive liability insurance or an equivalent self-insurance plan covering members of the governing body and appropriate medical and administrative personnel.

**13.** § 103.44. Purchasing and inventory.

There shall be written policies governing the control of inventories, including purchasing procedures, product selection and evaluation, and supply distribution. Records shall be maintained from annual survey to annual survey documenting compliance with these established policies.

**14.** § 105.11. Access.

(a) No person seeking necessary medical care from the hospital shall be denied such care for reasons not based on sound medical practice or the hospital's charter and particularly no such person shall be denied such care on account of race, creed, color, religion, sex, or sexual preference, in accordance with the provisions of the Pennsylvania Human Relations Act (43 P.S. §§ 951–963).

§ 105.12. Admission criteria.

The governing body, with the advice of or in conjunction with the medical staff, shall establish medical criteria for admissions to ensure provision of care based on medical necessity and appropriateness.

**15.** § 107.3. Requirements for membership and privileges.

(c) No applicant shall be denied medical staff privileges on the basis of sex, race, creed, color or national origin or on the basis of any other criterion lacking professional or ethical justification, including association with a prepaid group practice.

§ 107.12. Content of Bylaws, Rules and Regulations.

---

**16.** See note 16 on p. 533.

of medical staff meetings,[17] and continuing education requirements.[18] Review is required of utilization of not only hospital facilities but even out-of-hospital services.[19]

(*o*) Acceptance of medical staff by-laws.

Mechanisms shall be provided whereby there is evidence that each medical staff member has read and understands the bylaws and agrees to abide by the current medical staff bylaws and rules and regulations and by the hospital bylaws. As evidence of having read and understood the bylaws, each member of the medical staff should sign, on application to the medical staff and as the bylaws are amended, an agreement to abide by the current medical staff bylaws and rules and regulations and hospital bylaws.

**16.** § 107.26. Additional committees.

(b) The following additional committees are mandatory:

(1) A nominations committee, where appropriate, which shall conduct such elections as shall be required in the bylaws of the medical staff. The nominations committee shall make rules, not inconsistent with the medical staff bylaws, to govern medical staff elections.

(9) A bylaws committee.

§ 107.27. Committee membership.

(b) Membership on medical staff committees, other than the executive and nominations committees, shall be selected by the executive committee or in accordance with medical staff bylaws. The members of the nominations committee shall be elected by the entire medical staff.

**17.** § 107.32. Meetings and attendance.

Where the medical staff is departmentalized, the frequency of general staff meetings shall be determined by the medical staff and clearly stated in the medical staff bylaws and rules and regulations. Departmental meetings should be held monthly. When the medical staff is not departmentalized, medical staff meetings shall be conducted at least ten times annually, at monthly intervals. There shall be at least an annual meeting of the medical staff at which officers and committee chairmen make such reports as may be desirable and at which officers are elected for the ensuing year.

§ 107.33. Minutes.

Minutes shall be taken at each meeting and retained on file for at least one year. These minutes shall include records of attendance and shall adequately reflect the transactions, conclusions, and recommendations of the meetings. Retention of the minutes beyond one year shall be in accordance with the policy of the hospital.

**18.** § 107.41. Continuing education.

The medical staff shall require a continuing program of professional education for medical staff members, or require its members to give evidence of participation in such a program.

**19.** § 107.53. Utilization review.

Governmental agencies must not be allowed to go unchecked in their natural tendency to continually create rules which stretch their authority, while invading more and more areas traditionally proper for private freedom of action.

The majority, it would appear, adopts the view that government can best run our hospitals. There are those who would disagree. In any event, a legislative enactment, not a "regulation", should be necessary where there is a usurpation of heretofore private managerial prerogatives.

I, therefore dissent.

LARSEN, J., joins in the dissent.

Utilization review shall include periodic review, on a sample or other basis, of:

(1) the utilization of beds;

(2) the utilization of the diagnostic nursing, and therapeutic resources of the hospital;

(3) the availability of the hospital's resources to all patients in accordance with their medical needs, and

(4) the availability and utilization of out-of-hospital facilities and services.