520 A.2d 92

Pennsylvania Blue Shield, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued May 14, 1986, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Thomas E. Wood*, with him, *William H. Wood, Keefer, Wood, Allen & Rahal*, for petitioner.

*Jean M. Callihan*, Assistant Counsel, with her, *Beth C. Sheligo*, Assistant Counsel, *M. Hannah Leavitt*,

Chief of Litigation, and *Paul Laskow,* Chief Counsel, for respondent.

*Joseph J. Malatesta, Jr.,* with him, *Kevin J. McKeon, Malatesta, Hawke, McKeon & Morris,* for intervenor, The Chiropractic Fellowship of Pennsylvania.

*Roger F. Cox,* with him, *Zenola Harper, Blank, Rome, Comisky & McCauley,* for intervenors, Pennsylvania Chiropractic Society and the Individual Intervenors.

OPINION BY JUDGE BARRY, January 16, 1987:

This is an appeal by Pennsylvania Blue Shield (Blue Shield) from an adjudication of the Insurance Commissioner (Commissioner) that Blue Shield had violated Sections 6322 and 6329 of the Professional Health Services Plan Corporation Act (Act), 40 Pa. C. S. §§6322 and 6329 and Section 5(a)(7)(ii) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §1171.5(a)(7)(ii). The proceedings before the Commissioner were initiated on March 15, 1984, by the Insurance Department (Department) which issued an Order to Show Cause against Blue Shield. Both the Pennsylvania Chiropractic Society and the Chiropractic Fellowship of Pennsylvania have intervened.

Blue Shield is a general medical service corporation engaged in operating a non-profit professional health service plan as defined under the Act. Blue Shield offers services under two different types of contracts. The "community-rated" contract is the standard Blue Shield contract offered to individuals and to groups having less than 100 members. The "experience-rated" contracts are those offered to groups of over 100 members, usually organizations or employers. All insurance rates and subscriber contracts must be approved by the In-

surance Department under Section 6329 of the Health Services Act, 40 Pa. C.S.A. §6329.

Until 1980 Blue Shield did not extend coverage for chiropractic services. However, by the Act of October 10, 1980, P.L. 801, No. 151 (Act 151), several significant amendments were made to the Act. Under Section 6302 of the Act, doctor of chiropractic was added to the definition of "health service doctor" and chiropractic services were included within the definition of professional health services. Under Section 6322(b) professional health services which were not included in a subscriber agreement must now be made available to a subscriber upon request and for an appropriate premium.

On December 29, 1980, Blue Shield submitted two filings to the Department for approval, both of which included endorsements to its community-rated group contracts which would provide coverage for services provided by doctors of chiropractic when requested by the subscriber and for an additional charge.[1] The Commissioner disapproved these filings in his Order and Adjudication of August 12, 1982, interpreting the new amendments set forth in Act 151 for the first time. The Commissioner ruled that Act 151 prevents Blue Shield from imposing requirements on those seeking chiropractic services which it does not impose upon those seeking the same services from other health service doctors. He observed that Blue Shield's right to select whatever services it provides to its subscribers is not affected; however, if it decided to provide a particular service it could not base its coverage on the type of license the service provider holds if that provider is a "health service doctor" as defined in Section 6302. Blue Shield did not appeal this ruling.

---

[1] These filings were numbered 12-W-1980 and 13-W-1980.

On September 28, 1981, Blue Shield submitted to the Insurance Commissioner a filing proposing to add chiropractic services to experience-rated contracts when requested.[2] Blue Shield then requested that this filing be used as a prototype under which it would enroll all qualified experience-rated groups requesting chiropractic coverage and dispense with further filing requirements for each group. The Department granted these requests.

On March 15, 1984, the Department issued an Order To Show Cause alleging that Blue Shield violated the provisions of the Act and the Unfair Insurance Practices Act by improperly denying reimbursement to experience-rated group subscribers who, in availing themselves of services for which they were covered under their subscriber contracts, utilized the services of a chiropractor rather than a medical doctor or other health service doctor. On April 16, 1985, the Commissioner, adopting the reasoning of the previous Commissioner[3] in the August 12, 1982 Adjudication, ruled that Blue Shield was in violation of both the Act and the Unfair Insurance Practices Act. He made the following relevant conclusions of law:

3. Pennsylvania Blue Shield has violated Sections 6322 and 6329 of the Professional Health Services Plan Corporation Act, 40 Pa. C. S. §§6322 and 6329, by including doctors of chiropractic within the definition of 'doctor' in agreements with experience-rated groups only upon the specific request of such groups and up-

---

[2] This filing was numbered 9-W-1981.

[3] Previous Commissioner Michael L. Browne drafted the August 12, 1982 Order and Adjudication. The Order and Adjudication of April 16, 1985, the subject of these proceedings, was authored by Acting Insurance Commissioner William R. Muir, Jr.

on the payment of a separate, additional initial payment for such inclusion.

4. Pennsylvania Blue Shield has violated Sections 6322(b) and 6329 of the Professional Health Services Plan Corporation Act, 40 Pa. C. S. §§6322 and 6329, by unfairly discriminating against certain health service doctors, namely doctors of chiropractic, by failing to reimburse doctors of chiropractic for performing professional health services covered under experience-rated group contracts for Pennsylvania Blue Shield subscribers, unless the experience-rated group specifically requests the inclusion of doctors of chiropractic, when it reimburses other health service doctors for performing the same professional health services without requiring that the experience-rated group specifically requests that other health service doctors be included in the contract.

5. Pennsylvania Blue Shield has violated Section 5(a)(7)(ii) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, No. 205, 40 P.S. 6 1171.5(a)(7)(ii), by unfairly discriminating between its subscribers who are covered by experience-rated group contracts and those covered by non-group direct pay contracts by providing payment for covered professional health services rendered by doctors of chiropractic to experience-rated group contract subscribers only when coverage for such services is specifically requested by the group.

Blue Shield was ordered to provide coverage for services performed by a chiropractor which are covered when performed by another health service doctor and to refrain from adding chiropractic coverage to experience-rated group contracts only when the group

sponsoring the contract specifically requests the addition of such coverage. On appeal, Blue Shield argues that the plain and ordinary meaning of the language and legislative history of Act 151 support an interpretation that Blue Shield is not required to extend any chiropractic services to subscribers unless they request such services and pay an additional charge. In addition, it claims that Act 151 cannot be considered a nondiscrimination statute. Blue Shield further urges that the Commissioner erred by finding that Blue Shield violated the Unfair Insurance Practices Act and that his adjudication is in violation of Pa. CONST. art. 1, §17 and U.S. CONST. art. 1, §10 which prohibit the impairment of contracts.

## VIOLATION OF SECTIONS 6322 AND 6329 — EXCLUSION OF CHIROPRACTIC SERVICES

Section 6322 prior to the amendment read in relevant part:

§6322.   Scope of service

. . . .

(b) The certificate of authority, bylaws or resolutions of the board of directors of a professional health service corporation *may limit the professional health services that will be provided for its subscribers,* and may divide such professional health services as it elects to provide into classes or kinds, and it may enter into contracts with its subscribers or groups of subscribers to secure professional health services of any kind or class so delimited. (Emphasis added.)

40 Pa. C. S. §6322(b).

Act 151 added the following sentence:

A general medical services corporation shall make available to its subscribers or groups of subscribers, upon request of any individual for

his individual subscriptions or any group for the group subscribers, contracts which provide coverage for professional health services with appropriate premiums.

*Id.*

Blue Shield maintains that the language of Act 151 amending Section 6322 clearly and unequivocally requires that Blue Shield reimburse subscribers for any service performed by a chiropractor, regardless of whether it is included in the initial subscriber agreement, only if that service is requested and the extra charge paid. The Commissioner interpreted the language amending Section 6322(b) to mean that the full range of chiropractic services, *not included in the original subscriber contract,* must be made available to the subscriber upon payment of a separate additional premium, and that Section 6302, which defines health service doctors and professional health services, affords subscribers the right to freely choose a qualified service provider among health service doctors.

Inasmuch as Section 6322(b) grants to the professional health service corporations the power to limit the classes and kinds of services it offers and Section 6302 now includes chiropractors and chiropractic services within the professional health service doctors and services, we see no basis on which Blue Shield can distinguish its coverage policy with respect to chiropractors from similar policies with respect to other health service doctors where these services overlap. We accept the Commissioner's interpretation of the amending language of Act 151, namely, that Blue Shield must make all chiropractic services available to a requesting experience-rated subscriber for an appropriate premium, and if that service is already a service covered by the contract, properly performable by another health service doctor, no special request or added cost for such chiro-

practic services is warranted. Blue Shield urges that the treatment and procedures used by chiropractors are much different than other health service doctors and are not interchangeable when services overlap. We note, however, that Blue Shield challenges the Commissioner's ruling and not the validity of Act 151. The legislature did not address the differences in procedures utilized by various health services doctors in relation to overlapping services. Its reference, when defining chiropractic services, to the Chiropractic Registration Act of 1951, Act of August 10, 1951, P.L. 1182, 63 P.S. §§601-624, is an acknowledgment of its belief in the adequacy of the underlying treatments and procedures inherent in the services as described in that Act.[4] Moreover, the legislature, when amending the Act, did not qualify or set limitations to its language adding chiropractors to the definition of health service doctors.

---

[4] Specifically, 63 P.S. §602 reads:

§602. Definitions

The following words or phrases, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:

(a) 'Chiropractor' shall mean a practitioner of chiropractic.

(b) 'Chiropractic' shall mean a limited science of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health. It shall include chiropractic diagnosis; a system of locating misaligned or displaced vertebrae of the human spine, and other articulations; the examination preparatory to and the adjustment of such misaligned or displaced vertebrae, and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health and the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations.

63 P.S. §602.

The portions of the legislative history which Blue Shield offers as support for its argument are not persuasive. We note, as well, that in 1982 the legislature again amended the Act by the Act of November 17, 1982, P.L. 681, which added coverage for "ancillary health services" under Section 6302(a) of the Act, 40 Pa. C. S. §6302(a). The legislature impliedly approved the Commissioner's interpretation of Act 151 when it took no action to change or modify the language of the Act including its earlier amended sections. In *Hospital Association of Pennsylvania v. MacLeod,* 487 Pa. 516, 523 n. 10, 410 A.2d 731, 734 n. 10 (1980), our Supreme Court recognized such inaction as evidence that the legislature was satisfied with the interpretation given.

The Commissioner properly concluded that Blue Shield violated provisions of Section 6322 when it deprived subscribers of the right to coverage for the services of a chiropractor when those services were reimbursable under the contract.

### DISCRIMINATION AGAINST SUBSCRIBERS

The Commissioner has determined that Blue Shield violated Section 5(a)(7)(ii) of the Unfair Insurance Practices Act. This section reads:

(a) 'Unfair methods of competition' and 'unfair or deceptive acts or practices' in the business of insurance means:

(7) Unfairly discriminating by means of:

(ii) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy, fees or rates charged for any policy or contract of insurance or in the benefit payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

40 P.S. §1171.5(a)(7).

Blue Shield believes the Commissioner's holding in this respect is unfair because the discrepancies which exist between the subscriber contracts are discrepancies which normally exist between subscribers who request different services and pay different premiums. This, Blue Shield maintains, is not the same as charging different rates to different persons for extending essentially the same coverage. We disagree. To support his finding, the Commissioner states:

> Blue Shield fails to recognize the fact that the focus of its discrimination is not on the benefit that group members are entitled to receive; rather, its discrimination unfairly focuses on whether a particular service, which the group member is entitled to receive, will be paid for depending on the license held by the doctor providing that service. As a result, group members whose employers pay for a particular service are not entitled to have that service paid for if the service is provided by a doctor of chiropractic and the employer has not requested Blue Shield to amend its definition of 'doctor' in the contract to include doctors of chiropractic.

The Commissioner thus found Blue Shield guilty of disparate treatment among subscribers, which violates Section 5(a)(7)(ii).

Up to this point, we have agreed with the Commissioner's rulings that Blue Shield has violated both Section 6322 of the Act and Section 5(a)(7)(ii) of the Unfair Insurance Practices Act. The Commissioner also found Blue Shield guilty of two different violations of Section 6329 and another violation of Section 6322(b). We believe he erred with respect to the three latter charges; however, this order is a general order directing Blue Shield to provide the proper coverage and to cease and desist from its improper coverage practices. The order's

language is particularly relevant to the two former charges which we have discussed and upon which the Commissioner properly ruled. Therefore, we will affirm the Commissioner's order as issued. The Commissioner's order stands. We believe it is important for Blue Shield and the Commissioner to understand our reasons for rejecting the Commissioner's rulings on the three latter charges.

### VIOLATION OF SECTION 6329 — EXCLUSION OF CHIROPRACTIC SERVICES

The Commissioner found that Blue Shield's refusal to reimburse chiropractors was in violation of Section 6329. Section 6329 requires that the Department approve changes in contract and rate modifications. The Commissioner remarks in his opinion that, although the Department gave approval, there is some question as to whether Blue Shield properly implemented the proposed filings. Although it is not clear from his opinion, this, we assume, was the Commissioner's justification for holding Blue Shield in violation of Section 6329. We disagree. The record shows that Blue Shield submitted its proposed filings with respect to the coverage of chiropractic services in experience-rated contracts on September 28, 1981. These filings proposed only that a specific request be made by experience-rated subscribers for chiropractic services before coverage was extended. The Department approved this filing. Blue Shield then requested that this filing serve as a prototype for the enrollment of all qualified experience-rated groups desiring chiropractic coverage without being required to submit in advance individual filings for each group. This request made reference to a "going in" charge or "chiropractic rate" for the first year only. This request was approved. Blue Shield submitted its request in writing to the Department for the Department's ap-

proval. The Department rendered this approval. Although we agree that Blue Shield's manner of implementing the amendments made to the Act by Act 151 was erroneous, and their two requests somewhat inconsistent, Blue Shield sought and obtained the Department's approval as required under Section 6329 apparently with no attempt to conceal its misperception of the effect of Act 151. We realize the Department did not have the benefit of the Commissioner's 1982 ruling when it approved Blue Shield's filings and prototype request. Nevertheless, we must reject the Commissioner's 1985 ruling that Blue Shield implemented the filings in contravention of Section 6329.

### SECTIONS 6322 AND 6329
### DISCRIMINATION AGAINST DOCTORS OF CHIROPRACTIC

The Commissioner concluded that Blue Shield was in violation of Sections 6322(b) and 6329 as a result of its unfair discrimination against chiropractors. Our review of Sections 6322 and 6329 leads us to a contrary conclusion. The Act is designed to provide coverage for adequate health services to low-income individuals through a medical service corporation. Section 6322 defines the scope of those services while Section 6329, as mentioned, mandates Department approval of all rates and subscriber contracts. Neither section addresses itself to the protection of health service doctors from discriminatory practices. Rather, they confine themselves to the needs of the subscribers. Although Section 6324 addresses the rights of the health service doctors to register with the medical service corporation, this is inapplicable to the present situation. It is true that the Non-Discriminatory Re-imbursement Act of 1971,[5]

---

[5] Non-Discriminatory Re-Imbursement Act of 1971, Act of August 12, 1971, P.L. 313, *as amended,* 40 P.S. §1511.

would normally provide a remedy for chiropractors who have been discriminated against but this act does not apply to professional health service corporations.[6] The logical conclusion is that the legislature desired to insulate the professional health services corporations from such claims. The Commissioner, therefore, erred when he found Blue Shield in violation of Sections 6322 and 6329 for discriminating against chiropractors.

## IMPAIRMENT OF CONTRACTS

Blue Shield maintains that the Commissioner's Order violates PA. CONST. art. I §17 and U.S. CONST. art. I §10, which prohibit governmental interference with contractual relationships. In short, Blue Shield argues that the Commissioner's Order directs it to pay for chiropractic services rendered to subscribers under experience-rated contracts when the subscribers have neither requested nor agreed to pay for such benefits. This, they contend, is an alteration of the original intention of both parties and interferes with the contractual relationship. However, under the Commissioner's order, subscribers will not be charged additionally for utilizing those chiropractic services which are covered under their contract when provided by other health service doctors. Therefore, the expectations of the subscribers and their intent when contracting with Blue Shield will not be affected. Blue Shield's argument that its own expectations were affected must likewise fail. Blue Shield does not claim that Act 151 itself is in violation of the constitutional prohibitions against impairment of contracts. The Commissioner's ruling is merely an interpretation of that Act, which was passed in 1980, and in effect at the time the parties contracted. Thus, the

---

[6] Section 6307(a) of the Non-Discriminatory Re-Imbursement Act of 1971, 40 Pa. C. S. §6307(a).

Commissioner's ruling is not an alteration of contractual intentions or expectations. We find Blue Shield's constitutional argument without merit.

Accordingly, an order has been entered.

ORDER

Now, January 16, 1987, the order of the Insurance Commissioner, dated April 16, 1985, is hereby affirmed.

———

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent.

The majority errs in relying on the Commissioner's interpretation of Section 6322(b) since the express language of that section dictates that subscribers request professional health services before they are included in the health service contract. Act 151 should not be interpreted as affecting substantive provisions in existing health service contracts. Rather, the language should be applied to permit the availability of all types of health services which are requested by subscribers.

The statutory framework regulating non-profit health service plans[1] provides coverage for professional health services in various service categories. Section 6302 defines each specific service—dental, medical, optometric, etc.—as the care administered by doctors licensed in that practice. The Commissioner's interpretation that services which overlap are covered regardless of the specialty of the doctor performing the service contradicts Blue Shield's right to assess premiums based upon the kind of service provided in the separate agreements.

I would reverse the Commissioner's ruling.

———

[1] 40 Pa. C. S. §§6301—6335.