**ST. ELIZABETH'S CHILD CARE CENTER, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2006.
Decided April 3, 2006.

Philip J. Murren and Maura K. Quinlan, Camp Hill, for petitioner.

Howard Ulan, Sr. Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

St. Elizabeth's Child Care Center (St. Elizabeth) petitions for review of the July 29, 2005, order of the Department of Public Welfare's (DPW) Bureau of Hearings and Appeals (Bureau), which adopted the recommendation of an Administrative Law Judge (ALJ) to deny St. Elizabeth's appeal from DPW's order directing St. Elizabeth to cease and desist operation of an uncertified child day care center. We reverse.

St. Elizabeth is a non-profit child day care center affiliated with the Roman Catholic Church. On January 24, 1997, a DPW field representative visited St. Elizabeth and learned that the child day care center did not have a Certificate of Compliance, which DPW regulations require

for the operation of such a facility.[1] On April 18, 1997, DPW issued an order directing St. Elizabeth to cease and desist the operation of the uncertified child day care center. St. Elizabeth filed an appeal, arguing that DPW lacks statutory authority to promulgate regulations requiring a non-profit religious child day care center to obtain a Certificate of Compliance in order to operate.[2] (ALJ's op. at 15.)

The matter was heard by an ALJ, who considered the Pennsylvania Supreme Court's discussion of Article IX of the Public Welfare Code[3] in *Hospital Association of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980), and determined that DPW had statutory authority under Article IX to promulgate its regulations requiring a non-profit child day care center to obtain a Certificate of Compliance in order to operate. The ALJ recommended that St. Elizabeth's appeal be denied, and the Bureau adopted the ALJ's recommendation. St. Elizabeth now petitions this court for review.[4]

St. Elizabeth argues that DPW erred in concluding that it has authority under Article IX of the Public Welfare Code to promulgate regulations that require a non-profit religious day care center to obtain a Certificate of Compliance in order to operate. We agree.

 Section 902 of the Public Welfare Code provides that DPW "shall have supervision" over all "supervised institutions" and all "children's institutions with-

in the Commonwealth." 62 P.S. § 902. Section 901 of the Public Welfare Code defines "supervised institution" to include "all children's institutions ... within the Commonwealth"; section 901 defines "children's institutions" to mean "any incorporated or unincorporated organization, society, corporation or agency, public or private, which may receive or care for children...." 62 P.S. § 901. Because St. Elizabeth is a private organization that cares for children, it is both a "children's institution" and a "supervised institution" over which DPW exercises supervisory power.

Section 911 of the Public Welfare Code sets forth DPW's powers and duties, in pertinent part, as follows:

(a) [DPW] shall have the power, and its duty shall be:

(1) To make and enforce rules and regulations for a visitation, examination and inspection of all supervised institutions and said visitation, examination or inspection may occur both before and after the beginning of operation of the supervised facility....

(c) Whenever upon the visitation, examination, and inspection of any ... supervised institution, any condition is found to exist therein which, in the opinion of [DPW] is unlawful, unhygienic, or detrimental to the proper maintenance and discipline of such ... supervised institution, or to the proper maintenance, custody, safety, and welfare ... of the per-

---

1. DPW's regulation at 55 Pa.Code § 3270.3(c) requires that a non-profit entity seeking to operate a child day care center apply for a Certificate of Compliance under Title 55, Chapter 20 of the Pennsylvania Code (relating to licensure or approval of facilities).

2. St. Elizabeth also argued that DPW's regulation of its religious child day care ministry interferes with St. Elizabeth's free exercise of religion. However, the ALJ stated that he may not rule on issues of constitutionality.

3. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 901–922.

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with the law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

sons ... residing therein, to direct the officer or officers ... in any way having or exercising the control, government, or management of such ... supervised institution, to correct the said objectionable condition in the manner and within the time specified by [DPW].... If such officer or officers shall fail to comply with such direction, [DPW] may request the Department of Justice [i.e., the Attorney General] to institute appropriate legal proceeding to enforce compliance therewith, or [DPW] may withhold any State money available for such institution until such officer or officers comply with such direction.

62 P.S. § 911.

■ The maxim *expressio unius est exclusio alterius* teaches that, where certain things are specified in a law, omissions should be understood as excluded. *Finkelstein v. Commonwealth*, 61 Pa.Cmwlth. 91, 433 A.2d 146 (1981). First, section 911 of the Public Welfare Code specifies that DPW has the power to visit, examine and inspect a child day care center. Section 911 does not give, or even mention, the power to require a Certificate of Compliance in order to operate. Second, section 911 specifies that, whenever DPW visits, examines and inspects a child day care center before or after it begins to operate and finds an objectionable condition, DPW may refer the matter to the Attorney General to enforce compliance or withhold state money available to the institution. Section 911 does *not* authorize DPW to prevent the operation of a child day care center by requiring a Certificate of Compliance.

Article X of the Public Welfare Code, in contrast to Article IX, gives DPW the authority to promulgate regulations that require a *for-profit* child day care center to obtain a license in order to operate. Section 1002 of the Public Welfare Code states that no person shall operate any "facility, as defined herein, without having a license...." 62 P.S. § 1002. Section 1001 indicates that the word "facility" includes a "child day care center," which means "any premises operated *for profit* in which child day care is provided simultaneously for seven or more children who are not relatives of the operator, except such centers operated under social service auspices."[5] 62 P.S. § 1001 (emphasis added). Finally, section 1021 provides that DPW may adopt regulations establishing minimum standards for the issuance of licenses. 62 P.S. § 1021.

Article X clearly allows DPW to promulgate regulations that require a *for-profit* child day care center to obtain a Certificate of Compliance in order to operate. However, St. Elizabeth is *not* a for-profit child day care center. Thus, Article X does not apply. As indicated above, Article IX applies to St. Elizabeth, but Article IX does not give DPW the power to require that a religious non-profit, or any non-profit, child day care center obtain a Certificate of Compliance in order to operate. DPW erred in concluding otherwise.

Our supreme court's discussion of Article IX in *Hospital Association of Pennsylvania*, does not alter our view. In that case, a number of Pennsylvania hospitals contended that the Secretary and Department of Health[6] (DOH) lacked statutory

---

**5.** We note that the definition of "facility" in section 1001 specifically excludes child day care centers "supervised" by DPW. 62 P.S. § 1001. We also note that the words "social service auspices" includes non-profit agencies regularly engaged in child care. *Id.* Thus, it is clear that Article X licensing requirements do not apply to Article IX non-profit child care facilities.

**6.** With respect to supervision of hospitals, the legislature transferred all of the functions, powers and duties of DPW under Article IX of the Public Welfare Code to the Department of

authority to promulgate regulations governing the managerial practices of hospitals. Our supreme court disagreed, concluding that sections 902, 911 and 921 of the Public Welfare Code[7] provided such authority. However, our supreme court never specifically addressed whether Article IX authorizes a regulation requiring a Certificate of Compliance in order to operate. In fact, our supreme court noted, "We do not pass upon the reasonableness of any particular regulation. We hold only that [the state agency] possess[es] statutory authority to promulgate the challenged regulations." *Id.* at 524 n. 11, 410 A.2d at 735 n. 11.

Accordingly, we reverse.[8]

Judges SMITH–RIBNER and COHN JUBELIRER dissent.

## ORDER

AND NOW, this 3rd day of April, 2006, the order of the Department of Public Welfare, dated July 29, 2005, is hereby reversed.

## CONCURRING OPINION BY Judge PELLEGRINI.

While I agree with the majority's analysis that the Department of Public Welfare (Department) lacked statutory authority to require St. Elizabeth's Child Care Center (St. Elizabeth's) to obtain a license or certificate, I would not reach that issue, but instead reverse on the basis that the Department did not have jurisdiction to issue the order we are now reviewing.

Health. *See Hospital Association of Pennsylvania.*

7. Section 921 of the Public Welfare Code requires that DOH establish standards for the safe and adequate care of individuals at institutions, like hospitals and nursing homes, which furnish food and shelter to three or more persons and which provide some care

In its April 18, 1997 notice, the Department ordered St Elizabeth's to "immediately CEASE AND DESIST operation" and then went on the state:

You have a right to appeal the Department's decision within thirty (30) days of the mailing of this decision. Enclosed is a copy of the Department's Licensure/Approval Appeal. YOUR APPEAL MUST INDICATE THE REASONS FOR THE APPEAL AND YOU MUST BE SPECIFIC AS POSSIBLE REGARDING THE AREAS OF DISAGREEMENT WITH THE DEPARTMENT'S DECISION [55 Pa. Code] (§ 9003.11(C)).

\* \* \*

If you do not appeal the decision of the Department it will become final.

Fearing that the decision would become final if it did nothing, St. Elizabeth's appealed the decision to the Department's Hearing and Appeals which rendered a decision after hearing eight years later.

As the majority points out, Article IX of the Public Welfare Code[1] does not give the Department the power to require a nonprofit day care center to have a certificate of compliance to operate. Under Section 911 of the Public Welfare Code, 62 P.S. § 911, the Department is limited to visiting and inspecting non-profit centers and to inquiring into all matters relating to its operations; 62 P.S. § 911(a); and is given "free and full access" to the facility premises, records and all persons connected with St. Elizabeth's. 62 P.S. § 911(b). If

or service beyond the basic provisions of food, shelter and laundry. 62 P.S. § 921.

8. Because of our disposition of the first issue, we need not address the other issues raised by St. Elizabeth.

1. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 901–922.

the Department finds any conditions that are "unlawful, unhygienic, or detrimental," it is authorized to notify the institution of such conditions and "to direct the ... institution to correct the said objectionable conditions." 62 P.S. § 911(c). If the institution fails to correct any such objectionable conditions, the Department, however, is not given the power to hold a hearing on whether the institution is in compliance or, as here, whether the institution is required to get a license.

62 P.S. § 911(c) is quite specific that the Department's only civil legal remedy is to request an attorney to bring the appropriate action to enforce compliance. It provides:

> If such officer or officers shall fail to comply with such direction, the department may request the Department of Justice to institute appropriate legal proceeding to enforce compliance therewith....[2]

As can be seen, nothing gives the Department the authority to adjudicate a cease and desist order.

The manner in which a "cease and desist order" is enforced is important because it determines the type of access an entity has to this Court. If a cease and desist order can be enforced through the Department's administrative process, an appeal would come before this Court and we would review the Department's order in our appellate jurisdiction and apply, as does the majority, the normal administrative agency scope of review.[3] If, however, the Attorney General accedes to the Department's request and brings an action to enforce its cease and desist order, then a court and not the agency would make its own find-

ings of fact unencumbered by the effects of any action taken by the Department.

Because Section 911(c) of the Public Welfare Code, 62 P.S. § 911(c), only authorizes the Department to bring an action and the Department does not have the jurisdiction to enforce its cease and desist order through that basis, I would also reverse.

Judge COHN JUBELIRER joins in this concurring opinion.

---

2. The Department's other remedy is to "withhold any state money available for such institution until such officer or officers comply with such direction." 62 P.S. § 911(a).

3. Our normal appellate administrative scope of review is whether the adjudication is in accordance with law, whether constitutional rights have been violated, or whether the findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.