963 A.2d 1274

**ST. ELIZABETH'S CHILD CARE CENTER, Appellee**

v.

**DEPARTMENT OF PUBLIC WELFARE, Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 2008.

Resubmitted Jan. 22, 2009.

Decided Feb. 19, 2009.

132

Allen C. Warshaw, John A. Kane, Howard C. Ulan, Dept. of Public Welfare, Harrisburg, for Dept. of Public Welfare, appellant.

Philip J. Murren, Thomas A. Capper, Harrisburg, for St. Elizabeth's Child Care Center, appellee.

Gregory R. Reed, Law Offices of Gregory R. Reed, Harrisburg, for Keystone Christian Educ. Ass'n., appellee amicus curiae.

Randall Luke Wenger, Clymer & Musser, P.C., Camp Hill, for PA Family Inst. et al, appellee amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice EAKIN.

A Department of Public Welfare (DPW) field representative visited St. Elizabeth's Child Care Center, a nonprofit child day care center affiliated with the Roman Catholic Church. The field representative did not observe any health or safety hazards at the center; however, she determined it did not have a certificate of compliance. DPW regulations require all child day care centers providing care for seven or more children, like St. Elizabeth's, to obtain a certificate of compliance before commencing operations. 55 Pa.Code § 3270.3(c); *id.,* § 3270.11(a). Because St. Elizabeth's did not have a certificate, DPW ordered it to cease and desist operating the day care center. St. Elizabeth's appealed to DPW's Bureau of Hearings and Appeals, arguing DPW lacked statutory authority to promulgate regulations requiring certification of nonprofit child day care centers. St. Elizabeth's also raised constitutional concerns regarding the regulations' impact on religious liberty.

An administrative law judge (ALJ) explained Article IX of the Public Welfare Code, 62 P.S. §§ 901–922, grants DPW supervision over "all children's institutions within this Commonwealth," including nonprofit child day care centers like St. Elizabeth's. *Id.,* § 902(3). This supervisory power has been construed broadly. *See Hospital Association of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731, 734–35 (1980) (holding § 902 authorized Department of Health to regulate hospitals' managerial practices). Further, the ALJ determined § 911's primary purpose was to approve operations. ALJ Opinion, 7/25/05, at 15 (noting § 911(a)(1) authorizes inspection before operations commence). Therefore, the ALJ held DPW may require nonprofit child day care centers to obtain a certificate of compliance. *Id.,* at 18. Because of statutory constraints, the ALJ could not rule on the regulations' constitutionality. *See* 1 Pa.Code § 35.187 (enumerating ALJ's authority). The ALJ recommended St. Elizabeth's appeal be denied, and the Bureau of Hearings and Appeals adopted this recommendation.

The Commonwealth Court reversed, distinguishing *Hospital Association of Pennsylvania*, concluding it did not address any regulation under Article IX. *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare*, 895 A.2d 1280, 1282–83 (Pa. Cmwlth.2006) (citing *Hospital Association of Pennsylvania*, at 735 n. 11). Moreover, the court noted Article X authorizes DPW to promulgate regulations regarding licensing of for-profit child day care centers, *see* 62 P.S. §§ 1002, 1021, whereas Article IX is silent on the issue of certification, *see* 62 P.S. § 911. *St. Elizabeth's Child Care Ctr.*, at 1282. Applying the maxim *expressio unius est exclusio alterius*,[1] the court concluded DPW did not have authority under Article IX to require St. Elizabeth's be certified before operating its day care center. *Id.* The court did not discuss St. Elizabeth's religious liberty argument. *Id.*, at 1283 n. 8.

Judge Pellegrini concurred with the majority's analysis of Article IX, but would have reversed on different grounds, namely, that DPW did not have jurisdiction to enforce the cease and desist order. *Id.*, at 1283 (Pellegrini, J., concurring). He cited § 911, noting DPW is limited to visiting and inspecting nonprofit centers, inquiring into matters related to their operations, and directing institutions to correct any objectionable conditions. *Id.*, at 1283–84. He further argued § 911 does not give authority to issue cease and desist orders, but only permits DPW to request the Department of Justice institute legal proceedings. *Id.*, at 1284 (citing 62 P.S. § 911(c)).

Judge Cohn Jubelirer joined Judge Pellegrini's concurrence, and dissented without opinion. Judge Smith–Ribner dissented without opinion.

We granted allowance of appeal on the following issues:
Whether [the] Commonwealth Court erred when it invalidated a [DPW] regulation requiring nonprofit day care facilities, in order to lawfully operate, to hold a certificate of compliance from DPW verifying compliance with health and safety regulations?

1. The express mention of one thing excludes all others.

Whether [the] Commonwealth Court, in so invalidating the DPW regulation, erred in applying the maxim *expressio unius est exclusio alterius* to the absolute exclusion of other canons of statutory construction that are more relevant here?

Petition for Allowance of Appeal, at 3.

■ As this case concerns Article IX's meaning, it is a case of statutory interpretation and is a pure question of law. *See Commonwealth v. Bortz*, 589 Pa. 431, 909 A.2d 1221, 1223 (2006). Questions of law are subject to a *de novo* standard of review, and the scope of review is plenary. *Craley v. State Farm Fire and Casualty Company*, 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006).

DPW argues Article IX confers broad regulatory power on DPW, providing it with supervisory authority over "all children's institutions within this Commonwealth." 62 P.S. § 902(3). DPW contends the language authorizing the supervision of child day care facilities is more explicit than the language *Hospital Association of Pennsylvania* relied on to uphold extensive regulations under Article IX. *See Hospital Association of Pennsylvania*, at 734–35 (holding Article IX gives Department of Health power to establish rules and regulations although Article IX lacks express grant of authority). Finally, DPW questions the Commonwealth Court's exclusive reliance on the maxim *expressio unius est exclusio alterius*, maintaining the court should have considered competing canons of statutory construction. DPW's Brief, at 14.

■ St. Elizabeth's argues Article IX only permits DPW supervision of nonprofit, religious child care providers and does not authorize licensing. St. Elizabeth's Brief, at 16. Because administrative agencies may only exercise regulatory authority conferred on them expressly or by implication, St. Elizabeth's contends DPW lacks authority to require it have a certificate of compliance. *See Commonwealth v. Butler County Mushroom Farm*, 499 Pa. 509, 454 A.2d 1, 4 (1982). St. Elizabeth's notes DPW regulations relating to the social development of children may conflict with Catholic teaching. *See,*

*e.g.*, 55 Pa.Code § 3270.1. Therefore, St. Elizabeth's maintains DPW's regulatory scheme violates the federal Constitution's First Amendment and Article I, § 3 of the Pennsylvania Constitution.

"The purpose of the interpretation and construction of statutes is to ascertain and effectuate the legislature's intent." *Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citing 1 Pa.C.S. § 1921(a)). "Words and phrases [of a statute] shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa. C.S. § 1903(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Hannaberry HVAC v. WCAB (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 531 (2003) (citation omitted). "It is only when the statute's words are not explicit that the legislature's intent may be ascertained by considering the factors provided in 1 Pa.C.S. § 1921(c)." *Chanceford,* at 1104.

Article IX provides DPW "shall have supervision over ... all children's institutions within this Commonwealth." 62 P.S. § 902(3). A children's institution is defined as "any incorporated or unincorporated organization, society, corporation or agency, public or private, which may receive or care for children...." *Id.,* § 901. St. Elizabeth's, as a private child day care provider, qualifies as a children's institution subject to DPW's supervisory power. Article IX further states:

(a) The department shall have the power, and its duty shall be:

(1) To make and enforce rules and regulations for a visitation, examination and inspection of all supervised institutions and said visitation, examination or inspection may occur both before and after the beginning of operation of the supervised facility.

(2) To visit and inspect, at least once in each year, all state and supervised institutions; to inquire and examine into their methods of instruction, discipline, detention,

care or treatment, ... the official conduct of their inspectors, trustees, managers, directors or other officer or officers[,] ... the buildings, grounds, premises, and equipment[,] ... and all and every matter and thing relating to their usefulness, administration, and management, and to the welfare of the inmates thereof....

\* \* \*

(c) Whenever upon the visitation, examination, and inspection of any State or supervised institution, any condition is found to exist therein which, in the opinion of the department, is unlawful, unhygienic, or detrimental to the proper maintenance and discipline of such State or supervised institution ...[,] [the department has power] to direct the officer or officers ... to correct the said objectionable condition in the manner and within the time specified by the department....

*Id.,* § 911.

Article IX neither explicitly forbids nor requires DPW to issue regulations mandating that supervised institutions have a certificate of compliance. However, "[o]ur review of the code must recognize that '[s]ubstantive rule-making is a widely used administrative practice, and its use should be upheld whenever the statutory delegation can reasonably be construed to authorize it.'" *Hospital Association of Pennsylvania,* at 733 (quoting Bernard Schwartz, Administrative Law § 56 at 151 (1976)). "The interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous." *Caso v. Workers' Comp. Appeal Bd.,* 576 Pa. 287, 839 A.2d 219, 221 (2003); *see also* 1 Pa.C.S. § 1921(c)(8).

DPW's interpretation of its enabling statute is not clearly erroneous. Section 911 expressly requires DPW inquire into and examine supervised institutions' "methods of instruction, discipline, ... care or treatment, ... the official conduct of their ... managers, directors or other ... officers[,] ... the buildings, grounds ... and equipment[,] ... and all ... matter ... relating to their ... administration, and manage-

ment, and to the welfare of the inmates thereof." 62 P.S. § 911(a)(2). It is reasonable to infer Article IX permits DPW to certify supervised institutions have passed the inspection process DPW is required to perform.

Moreover, Article IX has been interpreted as granting broad supervisory powers to DPW. Although § 911 only specifically authorizes regulations related to visitation, examination, and inspection, *Hospital Association of Pennsylvania* relied on § 911 to uphold over 500 regulations of private hospitals on issues including patient dealings with administrators, orientation programs, inventory, and the taking and filing of minutes at meetings. *See Hospital Association of Pennsylvania*, at 734; 738–40. The regulations were so pervasive as to lead one Justice to declare them "a manifesto for ... a socialization of private hospitals!" *Id.*, at 737 (Flaherty, J., dissenting). In spite of his warning, this Court found Article IX's grant of supervisory power includes the power to make substantive rules regulating supervised institutions beyond mere procedure. *Id.*, at 734–35.

We further note DPW regulations requiring nonprofit and for-profit child care centers receive a certificate of compliance have been in effect in some form since 1978. *See, e.g.,* 55 Pa.Code § 20.4 (effective 1985); "Commonwealth of Pennsylvania Social Services Manual," Chapter 2, § 8A(59), at Original Record, Ex. A–16, at 9 (effective 1978). The legislature has not disturbed the regulations at issue here. This lack of activity over a 30–year period suggests DPW's regulations are not inconsistent with the legislature's intent. *See Hospital Association of Pennsylvania*, at 734 n. 10 (citing 1 Pa.C.S. § 1921(c)(8) (considering legislative and administrative interpretations of statute)).

In striking down the certificate of compliance requirement, the Commonwealth Court relied on the maxim *expressio unius est exclusio alterius*. *St. Elizabeth's Child Care Ctr.*, at 1282. However, when interpreting a statute, courts are required to follow the Rules of Statutory Construction. 1 Pa.C.S. § 1901 *et seq.* By relying exclusively on *expressio unius,* the Commonwealth Court failed to consider the weight

accorded to administrative interpretation of the statute, 1 Pa.C.S. § 1921(c)(8), the consequences of a particular interpretation, *id.*, § 1921(c)(6), or that the legislature had not disturbed the administrative interpretation of the statute. *Hospital Association of Pennsylvania*, at 734 n. 10 (citing § 1921(c)(8)).

This failure to consider other means of construction is problematic in light of this Court's treatment of *expressio unius. See Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675, 684 (1977) (warning automatic application of maxim may thwart legislative intent). Other courts and commentators have also recognized limits on the maxim. *See, e.g., Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 372, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (not reasonable to interpret acts delegating agency powers as including specific consideration of every evil to be corrected); *Texas Rural Legal Aid v. Legal Services Corporation*, 940 F.2d 685, 694 (D.C.Cir.1991) ("this canon [*expressio unius*] has little force in the administrative setting"); Cass Sunstein, *Interpreting Statutes in the Regulatory State*, 103 Harv. L.Rev. 405, 455–56 (1989) (warning against mechanical application of *expressio unius*).

Accordingly, we hold the Commonwealth Court erred when it invalidated DPW's regulations requiring St. Elizabeth's hold a certificate of compliance from DPW verifying its compliance with health and safety regulations. Further, we conclude the Commonwealth Court erred in applying *expressio unius est exclusio alterius* to invalidate the DPW regulations, while not referring to other canons of statutory construction.[2] We reverse the Commonwealth Court's order and remand to the Commonwealth Court for consideration of St. Elizabeth's religious liberty claim.

**2.** The Commonwealth Court did not specify in its conclusion which DPW regulations it was invalidating. *See* St. Elizabeth's Child Care Ctr., at 1283. As indicated above, DPW regulations require all child day care centers providing care for seven or more children, like St. Elizabeth's, obtain a certificate of compliance before commencing operations. 55 Pa.Code § 3270.3(c); *id.*, § 3270.11(a).

Order reversed; case remanded.

Jurisdiction relinquished.

Chief Justice CASTILLE and Justices TODD and GREENSPAN join the opinion.

Justice BAER files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Justice McCAFFERY joins.

Justice BAER, concurring.

I join the majority's holding that Article IX of the Public Welfare Code (Code), 62 P.S. §§ 901–922, grants the Department of Public Welfare (DPW) broad supervisory authority over children's institutions, and that such authority reasonably can be interpreted to include the power to promulgate regulations requiring certification of nonprofit childcare centers. I write separately, and respectfully, however, to distance myself from that portion of the majority opinion that deferentially relies upon DPW's interpretation of the Code to reach this conclusion. Nevertheless, based upon a review of the statutory language, I reach the same conclusion as that advocated by the DPW, and adopted by the majority.

As astutely recognized by the majority, Article IX of the Code authorizes DPW to make and enforce regulations for "visitation, examination, and inspection" of all supervised institutions, both "before and after the beginning of operation of the supervised facility." [1] 62 P.S. § 911(a)(1). It further directs DPW to visit and inspect such institutions at least once each year to examine various aspects of their operation, ranging from the "methods of instruction" to the "buildings, grounds, premises, and equipment," as well as "all and every matter and thing relating to their usefulness, administration, and management. . . ." *Id.* at § 911(a)(2). In the event DPW finds any condition to be "unlawful, unhygienic, or detrimental

---

1. The majority properly notes that a "children's institution," over which DPW has supervisory authority pursuant to 62 P.S. § 902(3), is defined as "any incorporated or unincorporated organization . . . which may receive or care for children. . . ." *Id.* at § 901.

to the proper maintenance and discipline" of the supervised institution, it has the power to "direct the officer or officers ... to correct the said objectionable condition in the manner and within the time specified by [DPW]...." *Id.* at § 911(c). While the term "certification" is not expressly employed, the very import of the statutory language clearly supports the determination that DPW has the power and duty to require supervised children's institutions to comply with general health and safety regulations and to confirm or certify that each facility has, in fact, complied.[2] Thus, based solely on the statutory language, I would conclude that the Code grants DPW the authority to promulgate regulations requiring non-profit childcare centers to obtain a certificate of compliance.

In reversing the Commonwealth Court's holding to the contrary, the majority cites the proposition that "[t]he interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous." Op. at 1277, citing *Caso v. Workers' Comp. Appeal Bd.*, 576 Pa. 287, 839 A.2d 219, 221 (2003); 1 Pa.C.S. § 1921(c)(8).[3] It went on to afford deference to DPW's interpretation of its enabling statute, finding that it was not clearly erroneous based on the statutory language cited at length, *supra.* Op. at 1277. In my view, judicial deference need not come into play under the circumstances presented. As this Court recognized in *Seeton v. Pennsylvania Game Commission*, 594 Pa. 563, 937 A.2d 1028, 1037 (2007), "[w]hile an agency's interpretation of an ambiguous statute it is charged with enforcing is entitled to deference, courts' deference never comes into play when the statute is clear."

**2.** Moreover, as the majority recognizes, DPW regulations that require certification of both for-profit and nonprofit child care centers have been in effect in some form since 1978, without any legislative declaration that nonprofit facilities are exempt from such requirement. Op. at 1278.

**3.** This provision states that "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: ... [l]egislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c)(8).

We further noted in *Seeton* that the United States Supreme Court recognized the dangers of deferring to an agency's interpretation when such position was developed in anticipation of litigation. *Id.,* citing *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (providing that "[d]eference to what appears to be nothing more than an agency's convenient litigation position would be entirely inappropriate."). I recognize that in this case there is no indication that DPW enacted the regulation at issue in contemplation of the current lawsuit. Nevertheless, I am bothered generally by administrative bodies citing their own interpretations in blind support of positions they advocate in litigation. I would therefore reverse the Commonwealth Court's decision based solely upon the statutory language of the Code, and save for another day the complex questions surrounding the deference afforded to agency regulations and litigation postures.

Justice SAYLOR, dissenting.

The General Assembly has required licensing of many types of health and personal care facilities. *See* 62 P.S. §§ 1001–1002. However, as for child day care centers, it expressly limited the licensing requirement to "for profit" entities. *See id.*[1] While I agree with the majority that courts should exercise care in drawing negative implications from a statute, presently, a very clear one arises from the General Assembly's textual precision in establishing such clear boundaries on the class of child day care centers subject to licensure.

Thus, the question arises whether the Department's "certificate of compliance" requirement is tantamount to licensure, as

1. Section 1002 of the governing statute mandates, "No person shall maintain, operate or conduct any *facility,* as defined herein, without having a license therefore issued by the department." 62 P.S. § 1002 (emphasis added). Section 1001 clarifies that the term "facility" includes a "child day care center," defined as "any premises operated *for profit* in which child day care is provided . . ." but not including those "supervised" by DPW. 62 P.S. § 1001 (emphasis added). There is no dispute in this case that Appellee's non-profit child day care center is a supervised entity, and thus, is not a "facility" subject to the statutory licensure requirement.

Appellee claims.  *See* Brief of Appellee at 17.  Testimony of Department officials supports Appellee's contention.  *See* R.R. at 431a (reflecting testimony from a Department official that, "I say 'license'—It is a certificate of compliance.  I think we're using them interchangeably."); *see also id.* at 445a.  This approach is consistent with the Department's own regulations, which employ the certificate to accomplish licensure for entities subject to the statutory licensing requirement and extend the identical requirement to other organizations.  *Accord* Brief for the Department at 11–12 (explaining that the Department's regulations historically did not distinguish between for-profit and non-profit facilities, and that its regulations retain the requirement that all child day care centers obtain a certificate of compliance before commending operations).[2]  Indeed, although the Department filed a reply brief, it does not refute Appellee's assertion that the certificate of compliance functions as a license.

In light of the above, I believe the Department has established a licensing scheme which extends beyond express statutory boundaries.  The Department relies on its implied powers to support its approach, explaining that it is required to supervise such centers and to order the correction of any condition which "in the opinion of the department is unlawful, unhygienic, or detrimental to the proper maintenance and discipline of such State or supervised institution or to the proper maintenance, custody, safety, and welfare of the ... persons being treated, detained or residing therein."  Brief for the Department at 12 (quoting 62 P.S. § 911(c) (emphasis deleted)).  According to the Department, "It is difficult to imagine a broader grant of authority."  *Id.*

2.  The Department's regulations define a certificate of compliance as:
  A document issued by the Department to a legal entity permitting the entity to operate a specific type of facility at a specific location for a specific period of time according to applicable Department regulations.  A certificate of compliance *approves the operation of a facility subject to Article IX* of the act (62 P.S. §§ 901–922) *or licenses the operation of a facility subject to Article X* of the act (62 P.S. §§ 1001–1087).
  55 Pa.Code § 3270.4 (emphasis added).

In *Commonwealth v. Beam*, 567 Pa. 492, 788 A.2d 357 (2002), we explained:

> this Court has long adhered to the precept that the power and authority exercised by administrative agencies must be conferred by legislative language that is clear and unmistakable. At the same time, we recognize that the General Assembly has prescribed that legislative enactments are generally to be construed in such a manner as to effect their objects and promote justice, and, in assessing a statute, the courts are directed to consider the consequences of a particular interpretation, as well as other factors enumerated in the Statutory Construction Act. Based upon such considerations, the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates.

*Id.* at 495–96, 788 A.2d at 359–60 (citations omitted). Thus, the Department's implied powers are to be assessed against its enabling authority, which, again, establishes clear boundaries upon licensure. While the Department's health and safety concerns are vitally important, it does not sufficiently explain why its employees cannot inspect facilities and supervise the correction of health-and-safety related deficiencies outside a scheme of regulation centered on licensure.[3] Moreover, in my view, the statutory boundaries upon licensure have a rational basis, as licensure may impact the costs of providing necessary child care services and may increase concerns of supervised entities regarding the possibility of governmental intervention in their curricula and/or ministries, as discussed by Appellee and its *amici*.

---

**3.** The Department's authority to visit and inspect supervised entities is expressly prescribed in the Public Welfare Code, as is its ability to seek enforcement via the Department of Justice (now the Office of Attorney General). *See* 62 P.S. §§ 911, 921(e). I believe that, pursuant to this authority, the Department could ensure the identification of entities subject to supervision by implementing a simple registration requirement, and certainly it could continue to maintain records of the results of its inspections and the compliance history of supervised entities.

Although I agree with the majority that the Department is to be accorded a fair amount of deference, and the longstanding tenure of the Department's regulations is relevant, such factors are not insurmountable in the face of a clear legislative scheme. *See, e.g., Insurance Federation of Pa. v. Commonwealth Dep't of Ins.*, 585 Pa. 630, 889 A.2d 550 (2005) (invalidating forty-year-old regulations of the Department of Insurance which required mandatory arbitration of underinsured and underinsured motorist coverage disputes). Here, I believe that the clear implication of the statute should control. I also do not believe that the decision in *Hospital Association of Pennsylvania v. MacLeod*, 487 Pa. 516, 410 A.2d 731 (1980), is controlling, as that case concerned the extent of powers expressly invested in the Department and not bounded by the Legislature in the manner of the licensure requirement.

Finally, it is worth repeating that the Department has identified no health or safety concerns pertaining to the childcare services provided by Appellee.

For the above reasons, I believe the Commonwealth Court reached the correct result and would affirm its order.

Justice McCAFFERY joins this dissenting opinion.